**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Gallegos, | No. CV-01-01909-PHX-NVW |
| Petitioner, | **ORDER** |
| v. | <u>DEATH PENALTY CASE</u> |
| Charles L. Ryan, et al., | |
| Defendants. | |

Before the Court is Petitioner Gallegos's motion for reconsideration. (Doc. 149.) He asks the Court to reconsider its order denying his motion to stay these proceedings, supplement his petition with a *Brady* claim, and appoint federal habeas counsel to represent him in state court. (Doc. 147; *see* Doc. 130.) The motion is denied.

## DISCUSSION

A district court has the discretion to reconsider and modify intermediate, non-final dispositions before final judgment is entered. Fed. R. Civ. P. 54(b); *see Holly D. v. California Institute of Technology,* 339 F.3d 1158, 1180 (9th Cir. 2003). Motions for reconsideration are disfavored, however, and should be denied "absent a showing of manifest error or of new facts or legal authority." L.R. Civ. P. 7.2(g); *see 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."). A motion for reconsideration

may not repeat arguments made in support of or in opposition to the motion that resulted in the order for which the party seeks reconsideration. *Id.*

In its order denying Gallegos's motion for a stay, the Court found that his *Brady* claim was untimely under 28 U.S.C. § 2244(d)(1)(D) because the factual predicate of the claim could have been discovered—and in fact was discovered, by the Arizona Federal Public Defender's Office ("FPD"), which also represents Gallegos—several years before it was presented in this case. Gallegos argues that this finding is based on factual errors. The Court disagrees.

There is no dispute that in 2009 counsel from the FPD were aware of Detective Saldate's record of improper conduct. *See Gallegos v. Ryan*, 820 F.3d 1013, 1040 (9th Cir. 2016) (Callahan, dissenting) (noting the FPD raised similar allegations concerning Saldate in *Runningeagle v. Ryan*, 686 F.3d 758 (9th Cir. 2012)). This circumstance is not affected by the fact that the *Brady* materials were first discovered through the efforts of Debra Milke's counsel during her state postconviction proceedings. *See Milke v. Ryan*, 711 F.3d 998, 1004–05 (9th Cir. 2013). To the contrary, in its 2006 opinion and order denying Milke's habeas petition, the district court discussed these same allegations of misconduct by Saldate. *Milke v. Schriro*, 2006 WL 3421318, at *16 & n.6, No. 98-cv-0060-PHX-RCB (D.Ariz Nov. 27, 2006).

As explained in the Court's previous order (Doc. 147 at 5), Runningeagle's counsel were able to discover this information, proving that Gallegos's counsel, from the same office, could have discovered it as well. Thus, the "vital facts" underlying the *Brady* claim could have been known before the Ninth Circuit's opinion in *Milke*, or more than a year before Gallegos filed his motion to stay and remand in the Ninth Circuit. *See Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) ("The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim 'could have been discovered through the exercise of due diligence,' not when it actually was discovered."). Gallegos has offered no explanation as to why he could not have discovered the same materials prior to the Ninth Circuit's 2013 decision in *Milke*, and therefore he has not met his burden of proving he acted with the requisite diligence. *See, e.g., Dicenci v. Rose*,

452 F.3d 465, 471 (6th Cir. 2006) (" [A] petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim.").

Gallegos also challenges the Court's alternative holding that even if the claim was raised in a timely manner, Gallegos was not prejudiced at trial by the absence of the *Brady* materials. Gallegos argues that his trial counsel could have used the information to impeach Detective Saldate so that his confessions would have been suppressed under *Miranda.* In this scenario, according to Gallegos, he would not have testified at trial and admitted that he sexually assaulted the victim.

As the Court previously noted, Gallegos, after confessing to Saldate, repeated his confession in the presence of Detective Chambers. Saldate, Chambers, and Gallegos testified at a suppression hearing before trial. Saldate testified that he advised Gallegos of his *Miranda* rights before questioning him and that Gallegos did not ask for an attorney. (Doc. 135, Ex. C, RT 8/3/90 at 23–24, at 29.) Detective Chambers testified that he did not threaten or coerce Gallegos during the second interview, in which Gallegos repeated his confession. (*Id.* at 69.) Gallegos testified that he repeatedly asked for a lawyer before and during his first confession, and that Saldate did not advise him of his *Miranda* rights until after he had confessed. (*Id.* at 97.) Gallegos also testified that Saldate asked if he would consent to having the interview tape-recorded and that he, Gallegos, refused. (*Id.* at 102.) At the conclusion of the hearing the court found that Gallegos's confessions were intelligent, knowing, and voluntary. (*Id.* at 118.) The court did not find it credible that Gallegos repeatedly invoked his right to an attorney before Saldate administered the *Miranda* warning. (*Id.*)

Even if defense counsel successfully used the *Brady* materials to impeach Saldate so that the trial court credited Gallegos's testimony and suppressed both confessions, the evidence against Gallegos was overwhelming. Gallegos's fingerprints were found in the victim's room and his DNA was found in her underwear. Whether or not the statistical probabilities stipulated to at trial were accurate or admissible, there was a match between Gallegos's DNA and the DNA found in the girl's underwear, and no physical evidence

implicated any other possible suspect. Impeaching Saldate with the *Brady* materials would have had no impact on this evidence, which tied Gallegos alone to the crimes. Any *Brady* violation was harmless.

Finally, Gallegos asks the Court to reconsider its decision denying permission for federal habeas counsel to represent Gallegos in state court. He raises no new arguments, so the request is denied for the reasons already stated.

## CONCLUSION

The Court did not err in determining that the *Brady* claim was time-barred or in its alternative finding that any *Brady* violation was harmless. Under these circumstances, as the Court previously found, a stay would be futile and it would not be appropriate to authorize the FPD to represent Gallegos in state court.

Accordingly,

**IT IS ORDERED** denying Gallegos's motion for reconsideration (Doc. 149).

Dated this 28th day of August, 2017.

_____
Neil V. Wake
Senior United States District Judge