Jon M. Sands
Federal Public Defender
District of Arizona
Nicole List (HI Bar No. 10077)
Lisa A. Gray (AZ Bar No. 016932)
Kush Govani FP022 (AZ Bar No. 032425)
Assistant Federal Public Defenders
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
nicole_list@fd.org
lisa_gray@fd.org
kush_govani@fd.org
602.382.2816 Telephone
602.889.3960 Facsimile

*Counsel for Petitioner*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Michael Gallegos,<br><br>            Petitioner,<br><br>    vs.<br><br>David Shinn, Director, Arizona Department of Corrections, Rehabilitation & Reentry, et al.,<br><br>            Respondents. | No. CV-01-01909-PHX-NVW<br><br>DEATH-PENALTY CASE<br><br>**Motion to Vacate Current Scheduling Order and Reschedule Evidentiary Hearing**<br><br>**First Request** |

Petitioner respectfully asks this Court to vacate the current scheduling order pursuant to Federal Rule of Civil Procedure 6(b) and Local Rule of Civil Procedure 7.3(a), and set a status conference on January 29, 2021. Respondents' counsel does not oppose the request. This is Petitioner's first request for additional time, and extraordinary circumstances justify this extension of time. This motion is based upon the attached memorandum.

1

## SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

### Background

On February 20, 2020, this Court granted Petitioner's request for an evidentiary hearing permitting him an opportunity to validate what this Court characterized as a substantial claim that his death sentence may have been unlawfully obtained in violation of his Sixth Amendment right to the effective-assistance-of-counsel. (ECF No. 160.) In response to the Court's order, the parties proposed a schedule for disclosure of exhibits and witnesses, production of expert reports, interviews of experts and lay witnesses and other preparatory matters, with a hearing to commence in May 2021. (ECF No. 165 at 5.) In material respects, the parties had adopted and then proposed the pre-hearing scheduling timetables that had been approved by this Court in several other cases; a schedule which afforded the parties at least a year to prepare for a hearing, while counsel attend to a demanding capital habeas caseload with attendant obligations to other clients and corresponding district and appellate court demands. *See*, Order, *Lopez v. Stewart*, CV-97-00224-TUC-CKJ (D. Ariz. Nov. 20, 2015), ECF No. 174; Order, *Salazar v. Ryan*, CV-96-00085-TUC-FRZ (D. Ariz. Sept. 19, 2016), ECF No. 227; Order, *Jones v. Ryan*, CV-01-00592-TUC-TMB (D. Ariz. Jan. 23, 2017), ECF No. 186; Order, *Cruz v. Ryan*, CV-13-00389-TUC-JGZ (D. Ariz. Apr. 3, 2018), ECF No. 61.

Previously, in these other hearing scheduling matters, the Court had accepted counsel's representation of the time necessary to complete pre-hearing investigations and disclosures, and to prepare for a hearing. In these proceedings, Petitioner's counsel believed that these same necessities warranted their request for a May 2021 hearing, but here the need for the requested timeframe is even more crucial. First, Petitioner's prior counsel resigned from the Federal Defender's office (ECF No. 156; ECF No. 159), and no attorney in the office had any substantive knowledge of Petitioner's case. In addition, Petitioner needed to retain two new expert witnesses to replace others who had died or retired. Undersigned counsel had

never met with the witnesses or investigated whether the probable witnesses had *more* to say. What is more, the proposed hearing in May 2021, seemed reasonable in light of the fact that the President of the United States had declared a National Emergency caused by the most deadly pandemic in more than a century.

Nonetheless, this Court expressed its preference that the parties propose a scheduling timetable that would result in a hearing commencing within six months and accordingly scheduled the evidentiary hearing to begin November 9, 2020. (ECF No.173 at 1.) Subsequently, this Court ordered that counsel, the Petitioner, and any testifying witnesses would need to appear in person for the hearing. (ECF No. 188.)

Petitioner's counsel submit that they have made every reasonable effort to comply with the Court's scheduling order. They have conducted witness interviews and expert witness communications by telephone or video-conference, communicated with Petitioner by telephone to prepare him for this hearing, and thus far complied with this Court's scheduling order. To date, counsel has received one expert report, but it still awaiting a second report from a newly obtained expert (ECF No. 181-1.) However, counsel must inform the Court that they cannot in good faith be prepared to complete the tasks required by the current scheduling order in a reasonably competent manner, or be prepared to effectively present evidence for the evidentiary hearing in early November. The pandemic has placed effective and competent performance of counsel out of reach. The pandemic has placed limitations on the legal profession and the operations of the courts throughout Arizona.

The United States Secretary of Health and Human Services declared COVID-19 a public health emergency on January 31, 2020. https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html (last visited Aug. 27, 2020). The President of the United States then declared a National Emergency on March

13, 2020. Proclamation No. 9994, 85 Fed. Reg. 15337, 2020 WL 1272563 (Mar. 13, 2020).

On that same day, the Chief Judge of the District of the Arizona, the Honorable G. Murray Snow, also entered an order virtually suspending all court operations, which substantially limited progress in most, if not all, criminal matters pending in this District. General Order 20-10, *In the matter of Court Operations Under the Exigent Circumstances Created by Corona Virus Disease (COVID-19)* (D. Ariz. Mar. 13, 2020), http://www.azd.uscourts.gov/sites/default/files/general-orders/20-10.pdf. Since then, Chief Judge Snow's Order has been supplemented almost fifteen times; its effects on court operations persist up to this day.

On March 30, 2020, Governor Doug Ducey issued a shelter-in-place order for all residents. Executive Order 2020-18, *Stay Home, Stay Healthy, Stay Connected Physical Distancing to Mitigate COVID-19 Transmission* (Mar. 30, 2020), https://azgovernor.gov/executive-orders (last visited Aug. 27, 2020)[1]. Due to Arizona's severe increase in COVID-19 cases and having one of the highest numbers of COVID-19 cases in the country, Governor Ducey issued another Executive Order delaying the reopening of Arizona. Executive Order 2020-43, *Pausing of Arizona's Reopening Slowing the Spread of COVID-19* (June 29, 2020), https://azgovernor.gov/executive-orders (last visited Aug. 27, 2020). As of August 26, in Arizona alone there are over 4,800 deaths due to COVID-19, with new deaths reported each day. Arizona Medical Association, *COVID-19 by the Numbers in Arizona*, https://www.azmed.org/general/custom.asp?page=coronavirus (last visited Aug. 27, 2020). As of August 27, in the United States there are over 178,000 deaths due to COVID-19. Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19) Cases in the U.S.*,

---

[1] The order was extended twice through May 15, 2020. *See*, Executive Orders 2020-33 (Apr. 29, 2020), 2020-36 (May 15, 2020), https://azgovernor.gov/executive-orders (last visited Aug. 27, 2020).

https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Aug. 27, 2020).

Courts throughout Arizona suspended jury trials, grand juries, and all in person court appearances. In Arizona, counsel remains subject to the Governor's Executive Orders[2] and the District Court's Order. Chief Judge Snow is only permitting certain jury trials to proceed. General Order 20-26, *In the Matter of Continuing Court Operations Under the Exigent Circumstances Created by Coronavirus Disease (COVID-19)*, (D. Ariz. May 28, 2020). The Court did not specify if evidentiary hearings for in-custody defendants may proceed, but cautioned that out-of-custody evidentiary hearings may proceed if the hearings can be held in compliance with CDC guidelines. Accordingly, except in multi-defendant cases, no more than one attorney and one client or client representative may sit at counsel table at any one time. General Order 20-26 at 4. Currently, there are three attorneys of record on this case representing Petitioner and under the current General Order, it would impossible for all three attorneys to be present at counsel table simultaneously. (ECF No. 162; ECF No. 167.)

The Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) suspended all legal and non-legal visitation on March 13, 2020. Arizona Department of Corrections, Rehabilitation and Reentry, *ADCCR Announces New Actions to Mitigate COVID-19 Risk*, (Mar. 13, 2020) https://corrections.az.gov/covid-19-management-updates?page=1 (last visited Aug. 27, 2020). ADCRR suspension continues through September 13, 2020, with additional extensions of the non-visitation rules anticipated. *ADCCR COVID-19 Management Strategy*, (Aug. 6, 2020) https://corrections.az.gov/covid-19-

---

[2] Protocol for review every two weeks and provide for Executive Order 2020-43 to remain in effect. *See*, Executive Order 2020-52, *Continuation of Executive Order 2020-43 Slowing the Spread of COVID-19*, (July 23, 2020), https://azgovernor.gov/executive-orders (last visited Aug. 27, 2020).

management-updates (last visited Aug. 27, 2020).

While neither party will suffer prejudice from deferment from the current schedule, enforcement of the current timetable will impede effective representation, hinder adequate preparation for the hearing including presentation of witness testimony, and ultimately pose a substantial risk of irreparable prejudice to the Petitioner: for it is the Petitioner who bears the ultimate burden to prove that the outcome of a constitutionally unjust 1994 resentencing proceeding should be overturned. Conducting the hearing on November 9 also threatens the health of Petitioner, counsel, testifying witnesses, and their respective family members—including immunocompromised members—who are uninvolved in the hearing. Under these circumstances, the equities strongly favor a suspension of the current scheduling order.

## Argument

**I.  The pandemic has created numerous insurmountable obstacles that preclude effective representation.**

This Court appointed federal habeas counsel for Petitioner in 2001 in accord with his statutory right to qualified legal representation in this capital case. (ECF No. 6 at 1; *see* 21 U.S.C. § 848(q)(4)(B) (current version at 18 U.S.C. § 3599).) As the Supreme Court has stated, the statute under which Petitioner was appointed counsel "seeks to promote effective representation for persons threatened with capital punishment." *Martel v. Clair*, 565 U.S. 648, 660 (2012); *see McFarland v. Scott*, 512 U.S. 849, 855, 859 (1994) (statutory protections "reflect[] a determination that quality legal representation is necessary" in capital proceedings to ensure "fundamental fairness in the imposition of the death penalty."); *see Christeson v. Roper*, 574 U.S. 373, 377 (2015) (per curiam) (same).

///

///

6

Yet, the pandemic has created significant obstacles to achievement of even minimally effective representation by:

1. Preventing effective communication between Petitioner and counsel and protecting his interests;

2. Interfering with the investigation of expert evidence and depriving Petitioner of the ability to present expert testimony at the hearing;

3. Interfering with the investigation of lay-witness evidence and impeding the presentation of lay-witness testimony at the hearing.

**A.  The pandemic has interfered with the attorney-client relationship and deprived counsel from fulfilling professional and ethical duties to effectively communicate with Petitioner and to protect his interests.**

Despite the pandemic's restrictions on all or almost all facets of representation, the professional norms encapsulated by the 2003 American Bar Association Guidelines continue to govern every stage of a capital proceeding. *See* Guideline 1.1(B) of the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines"). The ABA "Guidelines apply from the moment the client is taken into custody and extend to all stages of every case in which the jurisdiction may be entitled to seek the death penalty, including initial and ongoing investigation, pretrial proceedings, trial, *post-conviction review*, clemency proceedings and any connected litigation." *Id.* (emphasis added). The ABA Guidelines provide that counsel "should make every appropriate effort to establish a relationship of trust with the client, and should maintain close contact with the client." ABA Guideline 10.5(A). Before the pandemic, Petitioner's counsel had not developed a relationship of trust with him. The attorneys who filed the briefing in support of this claim both departed the office. (ECF No. 156; ECF No. 159.) Only one of his current attorneys has met him in person. And the attorney who has met Petitioner has only met him once. His other

7

1 two attorneys were assigned just weeks before the National Emergency was
2 declared on March 13, 2020. (ECF No. 162; ECF No. 167.)

3       The pandemic has obstructed the development of any relationship of trust. A
4 meaningful attorney-client relationship requires that defense counsel spend
5 significant time with their client because "[e]ven if counsel manages to ask the right
6 questions, a client will not—with good reason—trust a lawyer who visits only a few
7 times before trial[.]" *See* ABA Guideline 10.5 cmt. at 1008. "Client contact must
8 be ongoing, and include sufficient time spent at the prison to develop a rapport
9 between attorney and client." *Id.*; ABA Guideline 10.15.1(E)(1)–(2) (Post-
10 conviction counsel must "maintain close contact with the client" and "monitor the
11 client's mental, physical and emotional condition[.]") And the frequent, significant
12 communication is even more pronounced because the Petitioner suffers from life-
13 long permanent cognitive disabilities that impair his judgment and understanding.
14 *See* ABA Guideline 10.5 cmt. at 1007 ("Many capital defendants are, in addition,
15 severely impaired in ways that make effective communication difficult: they may
16 have mental illnesses . . . or have other cognitive impairments that affect their
17 judgment and understanding[.]")

18       Petitioner's counsel cannot meet any of these requirements in this
19 environment. As stated before, ADCRR has suspended all legal visits, and visits
20 will continue to be suspended through September 13, 2020. Moreover, counsel
21 cannot meet with Petitioner via videoconference in compliance with attorney-client
22 privilege as ADCRR has stated that any videoconference would be recorded. As a
23 result, there is a real probability that Petitioner will not meet his attorneys in person
24 until the day of the hearing.

25       In addition, Respondents have identified Petitioner as a witness to be called
26 at the hearing and intend to interview him before the hearing. (ECF No. 179 at 2.)
27 ADCRR directives render it impossible for counsel to prepare Petitioner for that
28 interview and prepare him for his hearing testimony. Without consistent and

repetitive in-person face-to-face communications, Petitioner's counsel are in no position to effectively prepare him to be interviewed by Respondents or to testify at the behest of Respondents at the hearing.

Most importantly, the pandemic prevents counsel from being present with Petitioner to protect his rights during the interview. Minimally competent representation demands counsel be physically present with Petitioner during Respondents' interview of him, so Petitioner and counsel have unobstructed and unlimited access to each other in order to consult privately, should the need arise.

The problem cannot be remedied by ordering courthouse consultation. ADCRR will not transport prisoners outside of the prison for matters except for a jury trial. Further, as stated in the attached exhibit, in-person meetings pose threats to the health of the participants, counsel, Petitioner, and the family members of all involved. (*See* Ex. A (filed under seal)[3].)

Finally, the present unprecedented circumstances are fraught with ethical conflicts. Here, Petitioner's counsel are driven by public health considerations to avoid contact with Petitioner, when their ethical duties demand the opposite. *See*, National Association of Criminal Defense Lawyers, *NACDL Issues Statement of Principles and Report—"Criminal Court Reopening and Public Health in the COVID-19 Era"* (June 4, 2020), https://nacdl.org/newsrelease/NewReportCourtReopeningAndCOVID-19. *See also* Ariz. R. Prof'l Conduct Rule 1.7(a)(2) (eff. 2003) (representation shall not be materially limited by the personal interests of the attorney). Simply stated, the pandemic has created a situation in which counsel is unable to provide effective representation to Petitioner based on a conflict between counsel's personal interests in not being exposed or exposing others to the virus and Petitioner's interest in presenting a claim backed by robust support. There is no objective reason for the

---

[3] Petitioner has filed an additional motion to file this exhibit under seal along with a proposed order. The exhibit is attached to that motion.

9

1 proceedings to rush to a final adjudication, when, as here, the attorney-client
2 relationship is completely disrupted and counsel lacks the ability to perform with
3 even minimal competence in order to prepare the Petitioner for interviews or the
4 hearing.

**B.     The pandemic has interfered with the investigation of expert evidence and will deprive Petitioner of the ability to present expert testimony at hearing.**

Two of Petitioner's mental health experts, Dr. Reschly and Dr. Fassler have been unable to evaluate the Petitioner in person. As it stands now, neither expert is willing to travel to Arizona in light of health and safety issues pertaining to the pandemic, and apart from that, the ADCRR will not allow expert visitations. Counsel have a duty to present mental health evidence in support of the prejudice prong of *Strickland.* At a minimum, an in-person evaluation by the mental health expert is required. *See, e.g.*, *Richardson v. Astrue*, No. 09 Civ. 1841 (SAS), 2009 U.S. Dist. LEXIS 116086, at *24 (S.D.N.Y. Dec. 14, 2009) ("[M]ental disabilities are difficult to diagnose without subjective, in-person examination[.]").

This Court has suggested that experts might evaluate Petitioner via videoconference, but that is a fraught process. *See* David D. Luxton, Larry D. Pruitt, & Janyce E. Osenbach, *Best Practices for Remote Psychological Assessment via Telehealth Technologies*, 45 Professional Psychology: Research and Practice, 1, 27–35 (2014) ("The lack of in-person presence may influence how information is assessed as well as what can be assessed . . . Further, the lack of physical presence in itself may influence a patient's clinical presentation."). ADCRR monitors and records all videoconferences to ensure Petitioner's compliance with its videoconference guidelines. In addition, Google controls a recording and creates a text transcript of the interview. An *open* mental health evaluation as just described threatens the integrity of the evaluation and alleged results. *See* Luxton, *supra.*

To be perfectly clear, even though Petitioner is able to present reliable

evidence without having his experts engage in further in-person evaluations, there is no objective reason to deny Petitioner the opportunity to derive relevant evidence that only an in-person mental health evaluation can uncover. In a capital case, where Petitioner's life is at stake, and where the parties agree that they will not be prejudiced by a postponement of the hearing, effective capital counsel have a duty to present expert mental health testimony supported by an in-person evaluation. It is not unreasonable to continue this hearing with the expectation that the mental health evaluation can begin early next year.

It is impossible to quantify the expert evidence that would be derived from an appropriate in-person evaluation. The whole purpose of conducting a reliable in-person mental health evaluation is to search for relevant evidence in the first instance. Only *after* investigation can the results of an appropriate in-person evaluation become known. It will not prejudice either party to allow Petitioner to postpone the current schedule to allow a reasonable evaluation process to take place.

Beyond the impediments to an appropriate mental health evaluation, serious risks to health and safety will prevent Dr. Reschly and Dr. Fassler from traveling to Arizona for the early November hearing. The Court has previously held that it is unlikely that it will permit video-conferencing of experts' testimony. (ECF No. 188.) This in turn would deprive Petitioner of a full and fair hearing on his constitutional claim. It would be manifestly unjust to allow the evidentiary hearing to ensue without affording Petitioner the opportunity to present constitutionally-relevant evidence, particularly in the midst of a public health emergency. Respondents agree with this proposition. No prejudice would ensue by postponing the hearing to allow a fair opportunity for the mental health experts to safely travel to Arizona, likely prior to mid-year 2021, near in time when the parties initially proposed the hearing take place.

### C. The pandemic has interfered with the investigation of lay-witness evidence and will impede the presentation of lay witness testimony at hearing.

The current pandemic has impeded and unreasonably limited lay witness investigation and preparation of lay witness testimony. Pre-pandemic, no lawyer worth her salt would prepare a case for trial (or in this case a significant evidentiary hearing) without meeting in-person with key witnesses. Yet, the pandemic has made this necessary aspect of effective advocacy impossible. Effective communications with witnesses have been hampered. Counsel have a duty to thoroughly investigate mitigation. *Porter v. McCollum*, 558 U.S. 30, 39 (2009). This duty extends to the post-conviction habeas process. *See* ABA Guidelines, 10.15.1(D)(4) (post-conviction counsel have the duty to "continue an aggressive investigation of all aspects of the case."). Vacating the current scheduling order would allow Petitioner to employ this simple tool of advocacy; to effectively engage with witnesses to further investigate the extent of their relevant knowledge and prepare their ultimate testimony. No prejudice would inure to either party by making allowance for this reasonable and effective form of investigation and preparation to ensue.

Specifically, face-to face, at-home interviews are the core of mitigation investigation and take place in circumstances that create a high risk of COVID-19 transmission. Due to counsel's inability to travel because of COVID-19, reaching some witnesses by telephone to schedule interviews has been delayed. Many witnesses have changed telephone numbers and home addresses since our communication with them in 2017, and tracking down new contact information is difficult to do by phone. Our ability to locate and identify active telephone numbers is often limited because Accurint[4] is not always reliable at reporting current cell phone numbers. Utilities, car ownership and registration, mortgages etc. are

---

[4] Accurint is a LexisNexis database used to locate and research witnesses.

typically tied to a physical address rather than a cell phone number. Therefore, changing cell phone numbers are not accurately updated in Accurint. In addition, because of counsel's concern for witnesses and their health, appearing on a door step if they may have unknown health related issues is not the most conducive approach. Sending letters, although not ideal for any investigation, is impossible to do when counsel is unable to identify an address for one witness after confirming he/she is no longer living at the last known address reported on Accurint. Many of these past months have been spent trying to locate witnesses without having the ability to go out and look for them. To date, there is still one witness that counsel has been unable to locate. Even with witnesses interviewed and updated declarations being prepared, counsel now faces the difficulties in getting these declarations signed without being able to deliver them in person and watch the declarant sign the document.

The pandemic will also impede Petitioner from presenting lay witness testimony at the hearing, when witnesses with health and safety risks will not be able to attend a public hearing, depriving Petitioner of a full and fair hearing.

## II. The scheduled hearing poses health and safety risks to counsel.

The scheduled hearing in the midst of the pandemic poses risks to the health of defense counsel and counsel's family members. The probability for counsel to recuse themselves remains high. (*See* Ex. A (filed under seal).) Apart from all other reasons, this ground independently supports vacating the current scheduling order and rescheduling the November hearing.

### Conclusion

Petitioner has made good faith efforts to comply with this Court's scheduling order for the evidentiary hearing. Counsel for Petitioner has timely made disclosures required under the scheduling order, telephonically interviewed witnesses, and conducted Zoom meetings with experts. However, counsel have

encountered insurmountable obstacles to their ability to effectively prepare for the hearing. Indeed, district courts across the Ninth Circuit have found the obstacles created by the pandemic to warrant equitable tolling of the AEDPA statute of limitations, a "very high" threshold. *See Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *see also Brown v. Davis*, No. 1:19-cv-01796-DAD, 2020 U.S. Dist. LEXIS 156120 (E.D. Cal. Aug. 27, 2020); *Cowan v. Davis*, No. 1:19-cv-00745-DAD, 2020 WL 4698968 (E.D. Cal. Aug. 13, 2020); *Dale v. Williams*, No. 3:20-cv-00031-MMD-CLB, 2020 WL 4904624 (D. Nev. Aug. 20, 2020); *Banda v. High Desert State Prison*, No. 2:19-cv-00989-KJD-VCF, 2020 WL 2926452 (D. Nev. June 3, 2020); *Dunn v. Baca*, No. 3:19-cv-00702-MMD-WGC, 2020 WL 2525772 (D. Nev. May 18, 2020); *Maury v. Davis*, No. 2:12-cv-1043 WBS DB, 2020 WL 3065934 (E.D. Cal. Apr. 21, 2020). A full and fair hearing cannot be achieved under the present circumstances, threatening the reliability of a proceeding with life and death consequences. More time is needed. No prejudice will result from an extension of time.

Petitioner understands that if the pandemic were expected not to abate within a reasonable time, then accommodation might need to be made to the acceptable methods of advocacy incidental to the fair administration of justice. But prevailing scientific consensus suggests that is not anticipated to be necessary. Rather, there is growing consensus that by early next year vaccines currently in the final stages of clinical trials will turn the tide against the worst public health crisis in more than a century. No objective necessity warrants litigating the Petitioner's case to conclusion, before making allowance for the pandemic to wane within a reasonable time. No harm to the parties or this Court will transpire should the timeline to completion be extended.

The penalty of death is "unique in both its severity and finality." *Gardner v. Florida*, 430 U.S. 349, 357 (1977). Especially in a capital case, Petitioner is deserving of a full and fair opportunity to effectively present his case in accordance

with a fundamentally fair hearing with all available witnesses and evidence. Therefore, for all the reasons set forth herein Petitioner respectfully asks the Court to grant his unopposed request to vacate the scheduling order, reschedule the November 9, 2020 hearing, and set a status hearing for January 29, 2021, or at such other time convenient to the Court.

        Respectfully submitted this 28th day of August, 2020.

                              Jon M. Sands
                              Federal Public Defender
                              District of Arizona

                              Nicole List
                              Lisa Gray
                              Kush Govani
                              Assistant Federal Public Defenders

                              <u>s/Nicole List</u>
                              Nicole List
                              Counsel for Petitioner

**Certificate of Service**

I hereby certify that on August 28, 2020, I electronically filed the foregoing Motion to Vacate Current Scheduling Order and Reschedule Evidentiary Hearing with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Kat Esparza
Assistant Paralegal
Capital Habeas Unit