**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Gallegos,<br><br>  Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>  Respondents. | No. CV-01-01909-PHX-NVW<br><br>**ORDER**<br><br><u>DEATH PENALTY ORDER</u> |

    On remand from the Court of Appeals, this Court determined that Petitioner Michael Gallegos was entitled under *Martinez v. Ryan*, 566 U.S. 1 (2012), to an evidentiary hearing on his defaulted claim of ineffective assistance of counsel at resentencing.  (*See* Doc. 160.) The parties requested more than a year to prepare the hearing, which the Court rejected after examining the proposed discovery and hearing from counsel.  The Court set a hearing date for six months later on November 9, 2020.  (Doc. 173.)

    Gallegos has now moved to vacate the schedule and the hearing date entirely, to suspend work on the hearing until after an end to the COVID 19 pandemic, and to reconvene in four months to discuss then what replacement schedule should be set after a projected conclusion of the pandemic.  The Motion is replete with misstatements, grave exaggerations, and bold unsubstantiated assertions.  It fails to show that Gallegos' counsel and experts have taken the steps they could have to prepare in the time that has already

passed since February 2020 when a hearing was allowed. It shows they have done essentially nothing to overcome their proclaimed impediments to preparation, despite the Court's prior suggestions of possible relief that could be sought against impediments. Instead, Gallegos's attorneys proclaim their helplessness and demand suspension of these proceedings until COVID-19 is conquered and they can start work again. The Motion will be denied.

**DISCUSSION**

Gallegos asserts that the COVID-19 pandemic "has created numerous insurmountable obstacles that preclude effective representation." (*Id.* at 6.) He contends that the pandemic prevents effective communication between him and his counsel, interferes with the investigation and presentation of expert evidence, and interferes with the investigation and presentation of lay witness testimony. (*Id.* at 7.) These arguments lack support and indicate that counsel have yet to undertake diligent efforts to overcome the obstacles posed by the pandemic.

"A trial court is afforded great latitude in granting or denying motions for continuances." *Daut v. United States*, 405 F.2d 312, 315 (9th Cir. 1968). The Court is granted broad discretion on matters of continuances and will not be overturned except upon a showing of clear abuse. *F.T.C. v. Gill*, 265 F.3d 944, 955 (9th Cir. 2001) (citing *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1102 (9th Cir. 1998)).[1] After careful consideration of each of the proffered reasons for Gallegos's request, the Court concludes that none of the reasons justify the requested delay. *Cf. Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution].")

---

[1] Denial of Gallegos's motion is not a denial of discovery, but if it were so deemed, such decisions are similarly committed to the sound discretion of the court, and Gallegos has made no clear showing that denial of necessary discovery will result in actual and substantial prejudice to his interests. *See Sablan v. Dep't of Fin. of Com. of N. Mariana Islands*, 856 F.2d 1317, 1321 (9th Cir. 1988). As is discussed later, Gallegos demanded unnecessary and duplicative discovery and has not even done discovery that has been available, instead proclaiming it impossible or futile.

Gallegos states that his counsel's ability to provide effective representation is hindered by the policies of the Arizona Department of Corrections, Rehabilitation, and Reentry ("ADCRR"), which currently prohibit in-person visits. (*Id.* at 7–8.)  To the extent counsel's ability to communicate with his client could impede the development of a relationship of trust with Gallegos, Gallegos does not say straight out that it has—only that it could.  He fails to point to any specific prejudice to his interests in the evidentiary hearing caused by this lack of communication.  Notably, the 2003 American Bar Association Guidelines, cited by Gallegos on this point (Doc. 192 at 7–8), remain just that—guidelines.  *See Silva v. Woodford*, 279 F.3d 825, 840 (9th Cir. 2002) (stating that the relevant ABA Standards at issue are only guides).  And they are guidelines that obviously did not consider the current difficulties faced by the legal community in 2020.  While it is true that COVID-19 creates challenges for communication with clients, the Court and public have a strong interest in the prompt resolution of this case, which has been pending in the federal courts since 2001.  Multiple strategies for communication are available and have been utilized by the Court and attorneys in other cases since the inception of the restrictions on in-person communication imposed by the pandemic.  Gallegos's counsel have not even tried those strategies.  Nor have counsel moved for relief against or modification of the restrictions or offered accommodations that would adequately serve the Department's legitimate concerns.

Gallegos asserts that neither video conferences nor courthouse consultations are viable options because ADCRR records such conferences, violating attorney-client privilege, and does not transport prisoners except in the case of jury trials. (Doc. 192 at 8–9.)  As the Court has repeated on several occasions, it may issue an appropriate order directing ADCRR to allow in-person visits, prohibit the recording of videoconferences, allow counsel to monitor Gallegos's evaluation, and transport Gallegos to the courthouse— *if Gallegos files a motion requesting such relief.*   Gallegos's counsel's refusal to seek focused relief or accommodation is a self-inflicted harm, not a self-fulfilling prophecy.

Gallegos cites shelter-in-place orders issued by Arizona Governor Doug Ducey. He also cites Chief Judge Snow's limitations on jury trials. (*Id.* at 4.) These orders do not prevent Gallegos from preparing for the hearing and do not prevent a hearing from taking place. The hearing in this case is entirely consistent with Judge Snow's administrative orders, which are themselves subject to the decisions of the presiding judge. Gallegos specifically notes that under Judge Snow's General Order 20-26, only one attorney at a time will be able to sit at counsel table. (*Id.* at 5.) Gallegos does not explain how this will prevent a fair hearing. That is also subject to the modification of the presiding judge. Lead counsel may represent Gallegos by herself, or with Gallegos's second and third attorneys present in the courtroom, at a safe social distance in the gallery, taking their place at counsel table when it is their turn to argue or examine witnesses. Again, Gallegos' counsel have not even requested that accommodation, which the Court grants as a matter of course for cases involving multiple counsel.

Gallegos asserts that the pandemic has interfered with the investigation of expert evidence and will deprive him of the ability to present expert testimony at the hearing. Gallegos states that neither of two out-of-state experts he has retained, Dr. Reschly or Dr. Fassler, has evaluated Gallegos in person and both experts are unwilling to travel to Arizona in light of the pandemic and ADCRR's restriction on visitations. (*Id.* at 10–11.) At a scheduling conference as early as May 8, 2020, however, the Court explained that "[t]he prison wardens are not going to determine whether the petitioner is available for interview by his experts. So if that can't be worked out promptly I will work it out by order. . . . So the petitioner's experts will be allowed to interview him live unless they want to transport him somewhere else. . . ." (RT 05/08/20 at 5.) To date, the Court has received no requests to order such accommodations. To the extent Gallegos asserts that videoconference evaluations are a "fraught process," the Court acknowledges that while they may not be a perfect solution, they are a workable one.

Gallegos also expresses concern about requiring in-person testimony from his expert witnesses. (Doc. 192 at 11.) The Court has not made a final determination as to

which witnesses will be required to testify in person.  The Court has indicated that it will require in-person testimony from expert witnesses only on contested issues, but it cannot make such a determination until it has reviewed the experts' reports and learned what will be contested.

As to the experts' unwillingness to travel, the Court did not set the date for the evidentiary hearing until May 11, 2020, when the number of daily COVID cases in Arizona was the same as or higher than it is now.  Nonetheless, Gallegos chose to retain out of state experts, half a continent away.  While Dr. Fassler had previously submitted a report in this case, he had not yet evaluated Gallegos.  As early as April 29, 2020, the Court instructed counsel, who had not yet contacted ADCRR about special arrangements, to try to work out the issues with Dr. Fassler's evaluation of Gallegos by making appropriate inquiries with the Attorney General's Office.  (RT 4/29/20 at 19–21.)

Dr. Reschly, however, was not selected as an expert witness until after the Court had set the hearing date, after counsel had acknowledged that COVID was going to be an issue affecting the ability of experts to travel (Doc. 170 at 14, n.5), and after the Court had explained that the hearing was not going to be continued on those grounds (RT 5/18/20 at 20–21).  Counsel bear the consequences of choosing to retain out of state experts, including the possibility that they may refuse to come to Phoenix to testify.   In any event, Gallegos acknowledges that he "is able to present reliable evidence without having his experts engage in further in-person evaluations. . . ." (Doc. 192 at 10–11.)  The Court is not persuaded that the pandemic will deny Gallegos a fair hearing with respect to his expert witnesses.  Nor have they shown why they cannot travel, as some airlines still do not sell middle seats.

Gallegos argues that the pandemic has made it difficult to contact and prepare lay witnesses, but acknowledges that there is only one witness he has been unable to locate. (*Id.* at 13.)   He does not say who the witness is or show that the witness is not one of the many duplicative witnesses Gallegos's counsel wishes to offer.  The information provided by Gallegos in the parties' joint status report suggests both that the lay witnesses have

previously been interviewed and that much of the information they will provide is duplicative. (Doc. 183 at 8–11.) In addition, Gallegos intends to present much of his lay witness evidence through declarations. (*Id.* at 13–16.) Gallegos has not shown that the pandemic will significantly impede his presentation of lay witness evidence.

With respect to the health concerns expressed by Gallegos's counsel, following CDC Guidelines, the Court has protocols in place to reduce or eliminate community spread. To the extent the parties feel these protocols are inadequate the Court will consider, upon proper motion, additional measures. The Court also notes that the attorneys have not shown how their personal or family health issues impede their ability to carry out their duties in this case. Nor do they say the Federal Public Defender's Office is shut down by Governor Ducey's stay at home order or that the Governor has authority to shut down the Office. *See* U.S. Const. art. VI.

Gallegos expresses confidence that the pandemic crisis will abate early next year with the development of a vaccine. (Doc. 192 at 14.) That is utterly speculative and not a basis to cancel the preparation and the hearing. Senior District Judge Preska's comments from the Southern District of New York on this topic are equally relevant here:

> A trial in the midst of the COVID-19 crisis is, without question, more costly, inconvenient, and logistically challenging than a trial under normal conditions. The problem, however, is that nobody has a crystal ball, and nobody can predict if/when the so-called "new normal" of life in the time of COVID-19 will improve to the point that trials can proceed as they did before the "old normal" disappeared.

*United States v. Donziger*, 2020 WL 4747532, *4 (S.D.N.Y. August 17, 2020). As Judge Preska aptly noted, "just as nobody knows if/when things will improve, nobody knows if/when they might start to go sideways." *Id.* The hearing and the preparation for the hearing can be conducted safely with appropriate protocols in place.

Moreover, the Court has not yet determined if it will require live testimony for every witness or allow some televideo testimony. It is within the Court's discretion, to be determined after the close of discovery and in light of the nature of the factual disputes, to allow "the parties to present evidence through written declarations and limited oral

testimony." *Williams v. Woodford*, 384 F.3d 567, 591 (9th Cir. 2004). If the documentary evidence fully presents the relevant facts of Gallegos's claim, the Court does not abuse its discretion in determining that oral testimony and cross-examination are not necessary. *Id.* The Court will make that determination on a witness-by-witness basis at the appropriate time after the nature of the testimony is known. But if the case turns on hotly disputed expert testimony, probing cross-examination may be critical, which can be much more effective in live testimony.

Finally, counsel indicate that the "probability for counsel to recuse themselves remains high." (Doc. 192 at 13.) Attorneys cannot simply "recuse" themselves, and, in the absence of an order permitting counsel to withdraw, appointment of counsel in capital cases is for the duration of "every subsequent stage of available judicial proceedings." 18 U.S.C. § 3599(e) (previously codified at 21 U.S.C. 848(q)(8)). If Gallegos's counsel wish to be excused from preparation or appearing, they can present a motion with full supporting details, which the Court would consider and rule on. But if they are threatening to go on strike, without or in violation of Court order, they will be in violation of their professional and ethical duties, with the gravest consequences for themselves.

The Motion presents a broader and remarkable theme which demands correction. Gallegos's counsel say they originally requested a one-year schedule for discovery and trial, that they said that was necessary, and that the Court must believe their avowal and allow that time, not just the six-month schedule the Court set. They complain that other judges in the Tucson Division of this Court have allowed one-year times for other hearings upon avowal of the Federal Public Defender that such time was necessary.

But the Court does not have to and never does take it on faith that lawyers' demands for trial preparation time are justified. In every civil case, the Court sets a case management conference and schedule pursuant to Rule 16. The Court examines the nature of the issues, the contemplated discovery and preparation time, and the assertions of counsel of how much discovery and preparation time is warranted. Often the preparation demanded by

one or both sides proves unwarranted, and the Court sets a schedule different from what the lawyers request.  So it was here.

In this case, counsel have sought duplicative investigation and evidence from numerous witnesses.  As to non-expert witnesses, they seek to re-interview every witness previously interviewed to see if they "had *more* to say." (Doc. 192 at 3) (emphasis in original).  They seek duplicative expert witnesses.  Counsel's demand for blind faith on the extent of evidence and preparation time needed is off-base.  No lawyer is entitled to such faith.  The six-month preparation schedule was more than adequate for the issues in this case, as the Court has explored it with counsel multiple times.  Gallegos's counsel has recently obstructed Respondent's expert's preparation by cancelling, without order of the Court, the televideo interview of their client.  That obstruction did not lead to an extension of the schedule.  Nor will this equally unjustified motion.

**IT IS  THEREFORE ORDERED** that Gallegos's motion to vacate (Doc. 192) is denied.

**IT IS FURTHER ORDERED** reaffirming the remaining deadlines set forth in this Court's orders of May 11, 2020, and August 14, 2020 (Docs. 173, 187).

Dated this 4th day of September, 2020.

_____
Neil V. Wake
Senior United States District Judge